# Funding of Grants
# by the National Institutes of Health

The National Institutes of Health may, consistent with 31 U.S.C. § 1502(a), fund an entire research grant out of a single fiscal year's appropriations regardless of how long it takes to complete the work under the grant.

February 11, 1986

MEMORANDUM OPINION FOR THE GENERAL COUNSEL,
DEPARTMENT OF HEALTH AND HUMAN SERVICES

This responds to the request of your Office for the Department of Justice's opinion whether the National Institutes of Health (NIH) may use the appropriation for one fiscal year to fund a grant when the work under the grant may take two or three fiscal years to complete, or whether NIH must fund each year's work from a separate appropriation. You have asked this question because the Comptroller General has concluded that:

> the executive branch plan to fund some 646 NIH research grants
> on a 3–year basis with fiscal year 1985 funds is unlawful,
> because in the absence of specific statutory authority, such
> actions violate 31 U.S.C. § 1502(a).[1]

For the reasons stated below, we believe GAO's conclusion that NIH may not lawfully fund grants on a multi-year basis is incorrect. We believe, based on the pertinent statutes as well as the principles articulated in prior Comptroller General opinions, that NIH may, under the circumstances outlined below, use the appropriation for one fiscal year to fund the entire cost of a grant made during that fiscal year, regardless of how long it takes to complete work under that grant.

## I. Statutory Language

The Comptroller General's conclusion is based on 31 U.S.C. § 1502(a), which provides:

---

[1] Letter to Hon. Lowell Weicker, Jr., Chairman, Subcommittee on Labor, Health and Human Services, and Education of the Senate Committee on Appropriations from Milton J. Socolar, Office of the Comptroller General, General Accounting Office (GAO) (Mar. 18, 1985) (GAO letter).

19

> The balance of an appropriation or fund limited for obligation to a definite period is available only for payment of expenses properly incurred during the period of availability or to complete contracts properly made within that period of availability and obligated consistent with § 1501 of this title. However, the appropriation or fund is not available for expenditure for a period beyond the period otherwise authorized by law.

The plain language of this provision does not support GAO's conclusion that NIH may not use funds appropriated for one fiscal year to pay for work to be done in subsequent years under a multi-year grant. Although 31 U.S.C. § 1502(a) makes no reference to grants, the statute does refer to "contracts," and NIH research grants are a form of contract, as GAO itself has previously recognized.[2] Thus, under § 1502(a), the balance of an appropriation "limited for obligation to a definite period" — such as a particular fiscal year — may be used to "complete grants properly made" within that fiscal year and properly obligated consistent with 31 U.S.C. § 1501.[3] In other words, § 1502(a) contains two requirements: first, that the grant be "properly made" within the fiscal year being charged and, second, that the grant be "obligated" — *i.e.*, recorded as an obligation — consistent with § 1501.

The second of these requirements — that a grant be properly obligated consistent with 31 U.S.C. § 1501 — has no bearing on the general question of NIH funding of multi-year grants, but rather concerns the handling of particular obligations. Moreover, the papers we have reviewed contain no suggestion that the particular NIH grants that gave rise to the NIH-GAO dispute were not obligated consistent with § 1501. Absent facts to the contrary, we assume that issuance of each NIH grant is supported by appropriate documentary evidence and authorized by statute.

We also do not believe that GAO's position is supported by the first requirement, *i.e.*, that each grant be "properly made" within the fiscal year charged. The plain meaning of this statutory language is that it must be proper for NIH to *make* the grant within the fiscal year charged. Applying this interpretation, we see no reason why NIH may not make a multi- year grant during the first year of the grant. Indeed, we do not understand GAO to argue that NIH may not

---

[2] *See* 50 Comp. Gen. 470, 472 (1970) ("the acceptance of a grant . . creates a valid contract"). *See also* 62 Comp. Gen. 701, 702 (1983).

[3] Section 1501 states in pertinent part:

> (a) An amount shall be recorded as an obligation of the United States Government only when supported by documentary evidence of —
>
>         *      *      *
>
> (5) a grant or subsidy payable —
>
>   (A) from appropriations made for payment of, or contributions to, amounts required to be paid in specific amounts fixed by law or under formulas prescribed by law; [or]
>
>         *      *      *
>
>   (C) under plans approved consistent with and authorized by law . . . . There is no dispute that the NIH grants at issue here were obligated consistent with these requirements.

make such grants at that time, but only that NIH must spread the cost over the length of the grant. The plain meaning of the "properly made" language, however, does not require such cost spreading.[4]

## II. The GAO's Traditional Analysis

We also believe that the conclusion expressed in the GAO letter does not follow from its own prior opinions. Over the years, GAO has added a gloss to § 1502, known as the *bona fide* need rule. As stated in *Principles of Federal Appropriations Law* (GAO 1982) (*Principles*), GAO has taken the position that "[a] fiscal year appropriation may be obligated only to meet a legitimate, or *bona fide* need arising in the fiscal year for which the appropriation was made." *Id.* at 4–9. This principle would appear to require that a multi-year grant meet a *bona fide* need of the fiscal year whose appropriation is being charged.

The GAO letter states that the NIH grants were improperly made because the work done under them in subsequent years will not meet a *bona fide* need of fiscal year 1985. In arriving at this conclusion, GAO cites a series of cases involving funding for "continuous and recurring services [that] are needed on a year-to-year basis," such as repairs of typewriters and delivery of supplies. *Id.* at 6–7. However, as HHS points out:

> Without exception, th[e] decisions [cited by GAO] deal with the provision of materials and services of a routine and recurring nature that should appropriately be funded out of a current year appropriation. None of those decisions involved grants, and none dealt with a discrete project designed to meet a current need the accomplishment of which would take longer than a single fiscal year.

*Id.* at 6.

While relying on this strained analogy between grants for scientific study and routine office expenses,[5] the GAO letter makes no mention of its extensive body of opinions concerning the application of the *bona fide* need rule to contracts and grants that cannot be completed in one year. This body of opinions is summarized as follows in the GAO's *Principles*, *supra*, at 4–9, 4–10:

> *Bona fide* need questions [frequently] arise where a given trans-
> action covers more than one fiscal year. In the typical situation,
> a contract is made (or attempted to be made) in one fiscal year,
> with performance and payment to extend at least in part into the

---

[4] GAO's position finds no support in case law. Moreover, former Attorneys General, in interpreting the predecessor statutes to § 1502, similarly reached the conclusion that balances of appropriations may be used "to pay dues upon contracts properly made within the former [fiscal] year, even if the contracts be not performed till within the latter or current year." 13 Op. Att'y Gen. 288, 291 (1870). *See also* 18 Op. Att'y Gen. 566, 569 (1887).

[5] The GAO letter itself recognizes the weakness of this analogy: "[W]e recognize that there are fundamental differences between a contract for materials or services and a research grant."

21

following fiscal year. The issue is which fiscal year should be charged with the obligation. In this context, the rule is that, in order to obligate a fiscal year appropriation for payments to be made in a succeeding fiscal year, the contract imposing the obligation must have been made within the fiscal year sought to be charged, and the contract must have been made to meet a *bona fide* need of the fiscal year to be charged.

\* \* \*

It follows from the above statement of the rule that there are situations in which performance or delivery can extend into a subsequent fiscal year with payment to be charged to the prior fiscal year, as long as the need arose in the fiscal year to be charged. This principle applies even though the funds are not to be disbursed and the exact amount owed by the Government cannot be determined until the subsequent fiscal year.

In deciding whether a contract should be charged to the fiscal year in which it is made, GAO has taken the following position:

The fact that a contract covers a part of two fiscal years does not necessarily mean that payments thereunder are for splitting between the two fiscal years involved upon the basis of services actually performed during each fiscal year. *In fact, the general rule is that the fiscal year appropriation current at the time the contract is made is chargeable with payments under the contract, although performance thereunder may extend into the ensuing fiscal year.*

23 Comp. Gen. 370, 371 (1943) (emphasis added) (*quoted in Principles, supra,* at 4–13).

GAO has issued many opinions reiterating this "general rule." *See, e.g.*, 56 Comp. Gen. 351, 352 (1977); 50 Comp. Gen. 589, 591 (1971); 21 Comp. Gen. 822, 823–24 (1951); 20 Comp. Gen. 436, 437 (1941); 16 Comp. Gen. 37, 38 (1936). It has likewise made clear "that the question of whether to charge the appropriation current on the date the contract is made, or to charge the funds current at the time services are rendered, depends on whether the services are 'severable' or 'entire.'" *Principles*, at 4–13. Thus, the "determining factor" for whether a contract (or grant) for a multi-year project is "properly made" is whether the project "represent[s] a single undertaking" and should therefore be viewed as a single project. *Id.* at 4–14.[6] If it is, a *bona fide* need for the project arises in the first fiscal year, and that is the appropriation that should be charged.

The contract at issue in the 1943 opinion, quoted above, provides an example of a contract that was viewed by GAO as a single project. Under that contract,

---

[6] The GAO letter agrees that the fundamental issue is whether the grants are single research projects or are severable annual projects.

individuals were to prepare the ground, plant rubber-bearing plants, and bring them to harvest. GAO concluded that this contract:

> involved one undertaking, which although extending over a part of two fiscal years, nevertheless was determinable both as to the services needed and the price to be paid therefor at the time the contract was entered into. Such being the case, the fiscal year appropriation current at the time the contract was made was obligated for payments to be made thereunder.

23 Comp. Gen. at 371. GAO therefore rejected a Department of Agriculture voucher that would have divided the cost between the two fiscal years it took to complete the contract.

GAO opinions treating a variety of other contracts as single projects are also illustrative. For example, when the Government contracted in 1938 to have cattle inspected and slaughtered if infected with tuberculosis, GAO concluded that the 1938 appropriation should be charged for recompense paid to farmers for diseased animals found and slaughtered in later years. 18 Comp. Gen. 363 (1938). The need to test the animals arose in fiscal year 1938, and therefore any liability under the contract, regardless of when discovered, had to be charged to the 1938 appropriation. *Id.* at 365.

More recently, in 1980, GAO insisted that a 1977 appropriation be charged for the cost of printing a book for the Commission of Fine Arts even though the printing took three years, from 1977 to 1979. 59 Comp. Gen. 386, 387–88 (1980). GAO explicitly rejected the Commission's argument that the printing costs should be charged against the 1977, 1978, and 1979 GAO appropriations in proportion to the amount of work done each year. GAO said:

> [T]he fact that performance under a contract extends over more than one fiscal year does not mean that payments are to be split among the fiscal years on the basis of services actually performed. Rather, the general rule is that payments due under a Government contract are to be charged to the fiscal year appropriation current at the time the legal obligation arose; that is, the fiscal year in which a bona fide need for the goods or services arose and in which a valid contract or agreement was entered into.

59 Comp. Gen. at 387–88. *See also* 50 Comp. Gen. 589, 591–92 (1971) (lawyers hired for case must be GAO paid from the appropriation for the year in which they were hired, no matter how protracted the litigation); GAO Opinion B-141839–O.M. (May 2, 1960) (NIH contracts for cancer research with Stanford University are "an entire job" and must be paid out of appropriation for fiscal year in which contracts were signed, "even though the period of performance may extend beyond the fiscal year until the object thereof is accomplished."); 31 Comp. Gen. 608, 610 (1952) (FY 1952 appropriation reimbursing states for civil defense expenditures charged although states did

not buy equipment until subsequent years); 23 Comp. Gen. 82, 83 (1943) (FY 1942 appropriation charged although printing of legal opinions not completed until FY 1943); 21 Comp. Gen. 574, 577 (1941) (FY 1940 appropriation charged although telescopes not shipped until FY 1941); 20 Comp. Gen. 436 (1941) (FY 1940 appropriation charged for cost of move although move not completed until FY 1941).

This general rule has also been applied by GAO to grants. For example, GAO concluded in 1940 that all expenses incident to a fellowship granted to South Americans for the study of public health in the United States could be charged "to the fiscal-year appropriation current and available at the time the fellowship is awarded" even though the fellowship extended into the succeeding fiscal year and some expenses, such as travel and maintenance, would not be incurred until the next year. 20 Comp. Gen. 185, 189 (1940). *See also* GAO Opinion B-37609, 267 Manuscript Series 1039 (1943) (grants for cultural programs with South America);[7] GAO Opinion B-34477, 261 Manuscript Series 1960 (1943) (grants to Chinese professors for study in the United States);[8] 39 Comp. Gen. 317 (1959). In this last opinion, the National Science Foundation sought GAO's opinion on issues relating to the obligation of certain appropriations. GAO stated:

> It is explained in the letter that the major portion of funds appropriated to the National Science Foundation is obligated and expended in the form of grants to educational institutions for the purpose of conducting basic scientific research activities. It is stated — *and correctly so* — that such grants are administratively recorded as obligations at the time the funds are formally granted to the grantee by letter, and that there is no deobligation of any unexpended portion of the grants as of June 30 [the end of the fiscal year]. *See* 31 Comp. Gen. 608.

---

[7] The 1943 opinion states·

By decision of April 3, 1942, B-2427, . . . it was held, in substance, that a grant of funds . . . constituted a legal obligation of the amount granted, even though the final obligation and expenditure for definite projects in the various American republics was [sic] to be accomplished by the said corporation in the following fiscal year. . . In the said decision, it was stated:

"Having in view the authority given by the Congress to the Coordinator to make grants . . . the conclusion appears justified that funds so granted . . . were not intended to remain subject to the fiscal year limitation of the appropriations from which the funds were derived, and that, insofar as concerns the Coordinator of Inter-American Affairs, such funds are legally obligated when formally granted to an authorized grantee. . . . *Cf.* 21 Comp. Gen. 498 "

\*     \*     \*

[Y]our above-quoted letter appears to be so similar . . as to warrant a similar conclusion — that is, that funds formally granted or formally agreed to be furnished to an institution or facility . . . are legally obligated at the time of the said grant or agreement to grant and *properly may be made available and expended thereafter by the grantee institution or facility without regard to the fiscal year limitation of the appropriations from which the funds were derived.*

267 Manuscript Series at 1041, 1042 (citations omitted; emphasis added).

[8] "It should seem obvious that all expenses connected with the second phase of the program — the bringing of Chinese professors to this country — are chargeable to the funds in question [*i.e.*, to funds from the fiscal year in which the grant was made] . . . ." 261 Manuscript Series at 1963

39 Comp. Gen. at 318 (1959) (emphasis added). *See also* 48 Comp. Gen. 186, 190 (1968) (FY 1968 appropriation "would be the only appropriation legally available to pay amounts due the grantee as a result of any required upward adjustment" in later years); 20 Comp. Gen. 370, 373 (1941) (grants may be used to pay for courses extending over two fiscal years). GAO has embodied this rule for grants in *Principles, supra*:

> In order to properly obligate an appropriation for an assistance program, some action creating a definite liability against the appropriation must occur during the period of the obligational availability of the appropriation. In the case of grants, the obligating action will usually be the execution of a grant agreement.
>
> *       *       *
>
> Once the appropriation has been properly obligated, performance and the actual disbursement of funds may carry over beyond the period of obligational availability.

*Id.* at 13–16, 13–17 (citations omitted).

In sum, GAO's opinions and *Principles* hold that § 1502 permits contracts and grants to be charged against the appropriation for a single fiscal year even though payments may extend over more than one year. They also hold that a grant may meet the *bona fide* need of an agency for a single fiscal year, even though work under the grant extends over more than one year. Our review of § 1502 and of GAO's opinions thus leads us to conclude that GAO's recent determination that NIH may not fund multi-year grants from a single appropriation is incorrect.

You have also asked whether a certifying officer who does not follow the Comptroller General's opinion would be liable under 31 U.S.C. § 3528(a)(4).[9] We believe that he would not be liable as, in our view, 31 U.S.C. § 1502 permits NIH lawfully to charge the entire cost of a grant against the appropriation for the fiscal year in which the grant was made. Because payment of the grant is not illegal, the provisions of § 3528(a)(4) are not applicable, and we would so inform GAO if they referred the matter to this Department.

Finally, you have asked whether charging the grant to the appropriation for one fiscal year would violate the Anti-Deficiency Act, 31 U.S.C. § 1341.[10] As

---

[9] That section provides.

    (a) A certifying official certifying a voucher is responsible for

*       *       *

    (4) repaying a payment

        (A) illegal, improper, or incorrect because of an inaccurate or misleading certificate;

        (B) prohibited by law, or

        (C) that does not represent a legal obligation under the appropriation or fund involved

[10] 31 U.S.C. § 1341 provides in relevant part:

    (a) (1) An officer or employee of the United States Government or of the District of Columbia government may not —

        (A) make or authorize an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation; or

        (B) involve either government in a contract or obligation for the payment of money before an appropriation is made unless authorized by law.

25

we have concluded that charging the grant to the appropriation for a single fiscal year is lawful, we do not believe a grant official following our opinion would violate this section.

## Conclusion

For the reasons stated above, we believe that NIH may charge the appropriation for a single fiscal year with the entire cost of a single grant.

CHARLES J. COOPER
*Assistant Attorney General*
*Office of Legal Counsel*